```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
PATRICIA L. CARLIN et al.,                                           :
                                                                     :
                              Plaintiffs,                            :
                                                                     :      24-CV-8435 (JMF)
            -v-                                                      :
                                                                     :      OPINION AND ORDER
UNITED HEALTHCARE INSURANCE COMPANY OF                               :
NEW YORK, INC. et al.,                                               :
                                                                     :
                              Defendants.                            :
                                                                     :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiffs Patricia L. Carlin ("Mrs. Carlin") and Roy H. Carlin ("Mr. Carlin") are in their eighties and enrolled in Medicare and a supplemental coverage plan. *See* ECF No. 48 ("SAC") ¶¶ 1, 18-19. After six Medicare claims they submitted were denied, they filed this lawsuit against Medicare Administrative Contractors National Government Services, Inc. ("NGS") and Novitas Solutions, Inc. ("Novitas" and, together with NGS, the "MACs"), as well as UnitedHealthcare Insurance Company, UnitedHealthcare Insurance Company of New York, UnitedHealth Group, Inc., and UnitedHealthcare, Inc. (together, the "United Entities"). They allege that Defendants improperly denied their claims for medically necessary services and bring claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), and state law. *See generally* SAC ¶¶ 85-176. Now pending are two motions to dismiss all claims in the Complaint. First, the MACs move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the Complaint for lack of subject-matter jurisdiction. *See* ECF No. 53. Second, the United Entities separately move, pursuant to Rule 12(b)(6), to dismiss the claims against them for failure to state a claim. *See* ECF No. 49. For the

reasons that follow, the Court GRANTS both motions but gives Plaintiffs leave to amend as to the United Entities.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Second Amended Complaint ("Complaint") and assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

### A. Medicare Claims Submissions

Medicare is a federal health insurance program for the elderly and disabled.  *See* 42 U.S.C. § 1395 *et seq*.  Medicare consists of four parts, two of which are relevant here: Part A, which addresses coverage for inpatient hospital care and certain home health services, *see id.* §§ 1395c, 1395d, and Part B, which provides supplemental medical insurance, *see id.* §§ 1395j, 1395k.  The program is administered by the Centers for Medicare & Medicaid Services ("CMS"), a division of the U.S. Department of Health and Human Services ("HHS").  CMS, in turn, contracts with Medicare Administrative Contractors or MACs, such as NGS and Novitas, to process claims, make initial coverage determinations, and pay benefits from the Medicare Trust Funds.  *See id.* § 1395kk-1; *see also* 42 C.F.R. §§ 421.100, 421.400.  CMS, however, is the real party in interest in all matters involving Medicare administration.  *See* 42 C.F.R. § 421.5(b).

Medicare Part A claims may be filed only by "providers," as defined in 42 C.F.R. § 400.202.  *See* 42 U.S.C. §§ 1395f(a), 1395y(a)(21); 42 C.F.R. § 424.33.  By contrast, Part B claims may be submitted directly by beneficiaries.  *See* 42 C.F.R. § 424.34.  In either case, if a Medicare beneficiary is dissatisfied with a MAC's initial determination, the beneficiary must pursue a multi-level administrative appeals process before seeking judicial review.  This process includes (1) redetermination by the MAC, *see id.* §§ 405.940-958; (2) reconsideration by a

Qualified Independent Contractor or QIC, *see id.* §§ 405.960-978; (3) a hearing before an Administrative Law Judge or ALJ (if amount-in-controversy and timeliness requirements are met), *see id.* §§ 405.1000-1058; and (4) review by the Medicare Appeals Council, *see id.* §§ 405.1100-1140.  Pursuant to 42 U.S.C. § 405(g), a beneficiary may seek judicial review of a final decision by HHS only after exhausting this multi-tiered administrative process.  *See* 42 U.S.C. §§ 405(h), 1395ff(b)(1)(A), 1395ii.  Under the Medicare statute and implementing regulations, however, a claim must meet specific criteria in the first instance to be considered a "clean claim" eligible for processing and appeal.  *See id.* §§ 1395ff(a)(2)(B), 1395u(c)(2)(B)(i); *see also* 42 C.F.R. §§ 405.924(b), 424.32.  Without a valid, clean claim, there can be no "initial determination" by the MAC and, by extension, there is no right to administrative or judicial review.  *See id.*

### B. Plaintiffs' Claims

Although Plaintiffs' Complaint identifies nine requests for reimbursement that were allegedly improperly denied, they now seek relief as to only six.  *See* ECF No. 63 ("Pls.' Mem."), at 9, 11.  The following is a summary of these six claims:

- Claim 1 (SAC ¶¶ 24-28):  Mrs. Carlin submitted a Part B claim dated February 7, 2024 (incorrectly dated 2023), to "CMS-Medicare c/o NGS and Novitas," for medical services rendered by an unspecified provider from the second week of February 2023 through January 2024.  SAC ¶¶ 24-28.  As neither MAC processed this claim, no initial determination was issued.  *See id.*; ECF No. 54, at 4-5; ECF No. 66, 2-3; *see also* Pls. Mem. 31 (acknowledging this fact).  Plaintiffs' purported submissions, ECF No. 62 ("Carlin Decl."), Exs. A-B, suggest that any such claim was not eligible for processing because it lacked essential information, such as the provider's name, full dates of service, and billing statement, *see* 42 C.F.R. § 424.32(a)(1); Medicare Claims Processing Manual, Ch. 1, §§ 80.3.1-2; Ch. 26, § 10.20 (2023).

- Claims 2 and 3 (SAC ¶¶ 29-52): Mr. Carlin submitted two Part A claims to "CMS-Medicare c/o NGS and Novitas."  SAC ¶¶ 29-52.  The first (Claim 2) was dated August 15, 2023, and pertained to home health services provided between September and October 2022.  *Id.* ¶¶ 29-43; *see also* Carlin Decl. Ex. C, at 2-3.  The second was dated February 13, 2024, and pertained to home health services provided following a

3

hospitalization in October 2023. SAC ¶¶ 44-52; *see also* Carlin Decl. Ex. D. As with Claim 1, no initial determination was issued. *See* SAC ¶¶ 29-52; *see also* Pls. Mem. 31 (acknowledging this fact). NGS received but did not process either of these requests because, as relevant, beneficiaries may not submit Part A claims. ECF No. 56, ¶¶ 16-18.[1]

- Claim 4 (SAC ¶¶ 53-55): Mrs. Carlin submitted a Part B claim dated August 11, 2024, to "CMS-Medicare c/o NGS and Novitas, for preventative medical care and related mammogram services rendered by various providers. SAC ¶¶ 53-55; *see also* Carlin Decl. Ex. E, at 7. NGS returned the claim as unprocessable. SAC ¶ 55; Carlin Decl. Ex. E, at 10; *see also* ECF No. 67 ("Fuller Decl."), ¶ 11. Mrs. Carlin never resubmitted her claim for an initial determination. *See* SAC ¶¶ 53-55; *see also* Fuller Decl. ¶ 11.

- Claim 6 (SAC ¶¶ 59-62): Mr. Carlin submitted a Part B claim to NGS dated August 5, 2024, for diagnostic medical services provided by Dr. David Scott. SAC ¶¶ 59-62; Carlin Decl. Ex. F, at 2-3.[2] As Plaintiffs concede, *see* Pls. Mem. 9, NGS received, processed, and partially paid this claim, Carlin Decl. Ex. F, at 2-3, 20-22; Ex. G. But no administrative appeal followed. *See* Pls. Mem. 9.

- Claim 7 (SAC ¶¶ 63-66): Mrs. Carlin submitted a Part B claim dated November 22, 2024, to "CMS-Medicare c/o NGS and Novitas," for medical services rendered by Drs. Rasmussen, Rosen, and Moley between July 2024 and November 2024. SAC ¶¶ 63-66; Carlin Decl. Ex. H.[3] As Plaintiffs partially concede, the MACs received, processed, and partially paid these claims. *See* ECF No. 55, ¶¶ 18, 20 (Dr. Rasmussen);[4] Pls.' Mem. 11 (citing Carlin Decl. Ex. I) (Dr. Rosen); ECF No. 56-5 (Dr. Moley). Yet nothing suggests that Plaintiffs pursued an administrative appeal. *See* SAC ¶¶ 63-66; Pls. Mem. 10-11.

Plaintiffs initially filed this lawsuit in New York state court. ECF No. 1-1. On November 6, 2025, Defendants removed it to this Court. ECF No. 1. The operative Complaint brings claims

---

[1] Even if Novitas had received these claims, *contra* ECF No. 54, at 5-6, Mr. Carlin's submissions would not have been a clean claim eligible for processing for this same reason.

[2] Although the SAC alleges that Claim 6 was never submitted, SAC ¶ 62, Plaintiffs later clarified that the claim was indeed sent to NGS, ECF No. 63 ("Pls.' Mem."), at 9 & n.3.

[3] The SAC alleges that Claim 7 also references services by Dr. Kendler, SAC ¶¶ 63-64, but Plaintiffs later clarified that it does not encompass such services, Pls.' Mem. 10-11 & n.4.

[4] At least some of the dates of service associated with Dr. Rasmussen coincide with Plaintiffs' Claim No. 5, which they no longer pursue. *Compare* Pls.' Mem. 10 & n.4 (correcting the dates of service associated with Claim No. 7), *with* SAC ¶ 57 (alleging unpaid Medicare claims in connection with Dr. Rasmussen's services in Claim No. 5); *see also* Pls.' Mem. 9 (withdrawing Claim No. 5).

4

against Defendants for violations of the RICO Act as well as claims under state law, namely for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligence, unjust enrichment, and violations of state consumer law. *See* SAC ¶¶ 85-176. Plaintiffs seek to bring these claims on behalf of themselves and a nationwide class of people who submitted Medicare claims to Defendants between January 1, 2010, and the present that were "unreasonably delayed or denied" on certain grounds. *See id.* ¶¶ 74-84.

## THE MACS' MOTION TO DISMISS

The Court begins with the MACs' motion to dismiss pursuant to Rule 12(b)(1). A Rule 12(b)(1) motion challenges the court's subject-matter jurisdiction to hear the case. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a Rule 12(b)(1) motion, a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Here, the MACs move to dismiss for lack of subject-matter jurisdiction on the ground that Plaintiffs failed to exhaust their administrative remedies before filing their claims. Judicial review of claims "arising under" the Medicare Act against MACs is strictly limited to claims for which the Secretary of HHS has issued a "final decision" following full exhaustion. *See* 42 U.S.C. §§ 405(g), (h), 1395ff(b)(1); *see also, e.g.*, *Heckler v. Ringer*, 466 U.S. 602, 605 (1984)

("Judicial review of claims arising under the Medicare Act is available only after the Secretary [of Health and Human Services] renders a 'final decision' on the claim . . . ."); *Retina Grp. of New Eng., P.C. v. Dynasty Healthcare, LLC*, 72 F.4th 488, 493, 496-97 (2d Cir. 2023) (holding that exhaustion is required for challenges to a MAC's decision). Significantly, the Supreme Court has construed the "arising under" language of the Medicare Act broadly to include all claims, however they are pleaded, that are "inextricably intertwined" with a claim for Medicare benefits. *Retina Grp. of New Eng.*, 72 F.4th at 495 (internal quotation marks omitted) (quoting *Heckler*, 466 U.S. at 615, 624). Put simply, the plain language of the Medicare Act "demands the channeling of virtually all legal attacks through the agency" in order to "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13 (2000) (internal quotation marks omitted).

Plaintiffs' claims are plainly subject to the Medicare Act's exhaustion requirement because, at bottom, they are nothing more than "cleverly concealed claims for benefits." *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1141 (9th Cir. 2010)). Plaintiffs insist that they allege "an intentional scheme to defraud" and thus "cannot be fairly ascribed as merely seeking reimbursement for unpaid [Medicare] claims." Pls.' Mem. 29. But the gravamen of Plaintiffs' claims is that Defendants perpetrated a fraudulent scheme by arbitrarily and unlawfully denying claims for medically necessary care. *See* SAC ¶¶ 106-26. To adjudicate the claims, therefore, the Court would have to weigh in on whether Plaintiffs were in fact entitled to reimbursements under the Medicare program. It follows that the claims "arise under" the Medicare Act and, thus, are subject to the exhaustion requirement. *See, e.g., Retina*

*Grp. of New Eng.*, 72 F.4th at 496 ("Where, as here, a district court is ultimately tasked with deciding whether a party [received] less than it was due under the Medicare Act, allowing a party to avoid the Act's jurisdictional bar . . . would subvert the statutory scheme."); *Munroe v. Aetna Medicare*, No. 23-1313-CV, 2024 WL 1266359, at *2 (2d Cir. Mar. 26, 2024) (summary order) (barring claims where "the resolution of [the plaintiff's] claims alleging improper delay would still require the district court to determine whether [the insurer] breached its duties under the Medicare Act"), *cert. denied*, 145 S. Ct. 769 (2024).

Plaintiffs do not — and could not — dispute that they failed to exhaust the claims for which they still seek judicial review. Indeed, as discussed, four of the six claims Plaintiffs pursue (Claims 1-4) were not even properly presented to the MACs and, thus, there were no determinations triggering appellate rights. *See* 42 U.S.C. §§ 1395ff(a)(2)(B), 1395u(c)(2)(B)(i); *see also* 42 C.F.R. §§ 405.924(b), 424.32. And although the MACs partially paid Claims 6 and 7, Plaintiffs fail to allege or otherwise establish that they pursued any sort of administrative appeal, as required by statute. *See* 42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A), 1395ii.

Instead, Plaintiffs contend that the Court should waive the administrative exhaustion requirement on futility grounds. *See* Pls.' Mem. 29-31. When considering whether the administrative exhaustion requirement should be judicially waived, courts in this Circuit consider "(1) whether requiring the plaintiff to administratively exhaust its claim would be 'futile'; (2) whether the judicial claim is 'collateral' to the administrative claim for benefits; and (3) whether the plaintiff would suffer irreparable harm if required to exhaust administrative remedies." *St. Francis Hosp. v. Sebelius*, 874 F. Supp. 2d 127, 131 (E.D.N.Y. 2012). Considering these factors here, the Court concludes that waiver is not appropriate. For starters, Plaintiffs' allegations of futility are far weaker than the allegations that courts have found to justify waiver. For example,

Plaintiffs cite *Estate of Lokken v. UnitedHealth Grp., Inc.*, 766 F. Supp. 3d 835 (D. Minn. 2025), an out-of-circuit district court decision waiving the administrative exhaustion requirement for allegations related to denied Medicare claims.  In that case, the plaintiffs alleged that "when a patient has a denial overturned [on appeal], [the defendants] immediately issue[d] another denial letter such that the patient [was] perpetually stuck in a loop of denial, appeal, denial until eventually they g[a]ve up," and the defendants eventually "approv[ed] any appeals that reach[ed] the late stages so that administrative remedies [were] never exhausted." *Id.* at 841.  Such allegations demonstrated that, although the administrative appeals process was technically available, the defendants rendered it impossible for the plaintiffs to ever fully exhaust their remedies to seek judicial review.  By contrast, the Complaint here is devoid of specific non-conclusory allegations about any steps Defendants take to frustrate the administrative appeals process.  Further, to the extent that Plaintiffs contend that there was no avenue to administratively appeal two of their claims, *see* Pls.' Mem. 31, that is because such claims failed to comply with the statutory requirements for submitting a Medicare claim, and Congress specifically chose to limit the judicial review of such claims, *see* 42 U.S.C § 1395u(c)(2)(B)(i); 42 C.F.R. § 405.924(b).  Accordingly, the Court finds no basis to waive the Medicare Act's administrative exhaustion requirement.

In short, the Court lacks subject-jurisdiction to review Plaintiffs' claims against the MACs.  Accordingly, the MACs' motion to dismiss must be and is GRANTED.

## THE UNITED ENTITIES' MOTION TO DISMISS

That leaves the United Entities' motion to dismiss pursuant to Rule 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible

claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). Plaintiffs' claims will survive the motion, however, only if the Complaint alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Thus, Plaintiffs must show "more than a sheer possibility that [Defendants] ha[ve] acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.

### A. The Civil RICO Claims

The Court begins with Plaintiffs' claims under federal law — a substantive civil RICO claim under 18 U.S.C. § 1962(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d) — as they are the basis for the Court's subject-matter jurisdiction over all of the claims against the United Entities. *See* Compl. ¶ 14.

#### 1. Applicable Law

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To prevail on a claim under this provision, a plaintiff "must show (1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of

9

the substantive RICO violation." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (internal quotation marks omitted). To satisfy the first prong, "a plaintiff must show that the defendant conducted, or participated in the conduct, of a RICO enterprise's affairs through a pattern of racketeering activity," *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014), with a "pattern of racketeering activity" defined as two predicate acts of racketeering within ten years, 18 U.S.C. § 1961(5). To establish a RICO conspiracy claim, a plaintiff must allege that the defendant participated in "an agreement to violate RICO's substantive provisions." *One World, LLC v. Onoufriadis*, No. 21-374-CV, 2021 WL 4452070, at *1 (2d Cir. Sept. 29, 2021) (summary order) (internal quotation marks omitted)

As defined in RICO, "racketeering activity" encompasses various criminal offenses, including mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343. *See id.* § 1961(1). In order to plead wire or mail fraud, a plaintiff must show "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (internal quotation marks omitted). Allegations of wire and mail fraud are generally subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). That, in turn, normally "requires a plaintiff to adequately specify the statements it claims were false or misleading, give particulars as to the respect in which the plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 991 F. Supp. 2d 479, 492 (S.D.N.Y. 2014) (internal quotation marks

omitted). Plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

In applying Rule 9(b) to civil RICO actions, "courts in the Second Circuit have applied a different standard in cases where a plaintiff claims that mails or wires were simply used in furtherance of a master plan to defraud, but does not allege that the communications themselves contained false or misleading information." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (cleaned up). In those situations, "Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998); *see also Zito v. Leasecomm Corp.*, No. 02-CV-8074 (GEL), 2004 WL 2211650, at *12 (S.D.N.Y. Sept. 30, 2004). That is because mailings in furtherance of a scheme are not technically "'averments of fraud' within the language of Rule 9(b)," and "[o]nce the plaintiff alleges with particularity the circumstances constituting the fraudulent scheme, neither the reputational interests nor the notice function served by Rule 9(b) would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls." *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995). But "[i]n cases in which a plaintiff claims that specific statements or mailings were themselves fraudulent, i.e., themselves contained false or misleading information, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred." *In re Sumitomo Copper Litig.*, 995 F. Supp. at 456.

Further, in pleading a RICO claim against multiple defendants, "the bare minimum of a RICO charge is that a defendant personally committed or aided and abetted the commission of

11

two predicate acts." *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992). In cases involving wire fraud or mail fraud, that standard can be met through allegations that the defendants "committed the predicate acts of mail and wire fraud by directing [the enterprise] and its employees to use the mails and/or wires to further the fraudulent scheme." *Serin v. N. Leasing Sys.*, No. 06-CV-1625, 2009 WL 7823216, at *8 (S.D.N.Y. Dec. 18, 2009). Thus, "it is . . . unnecessary for the Plaintiffs to allege that each of the individual Defendants personally committed at least two of the predicate acts of mail and/or wire fraud." *Id.*; *see also Angermier*, 14 F. Supp. 3d at 151. At a minimum, however, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). That means that a plaintiff may not rely solely upon defendants' "positions of control" in an enterprise, and may not link individual defendants to fraudulent activities "by stating only that [d]efendants were officers and shareholders" of the organization. *Productores Asociados De Cafe Rio Claro, C.A. v. Barnett*, No. 98-CV-499 (DAB), 1999 WL 287389, at *3 (S.D.N.Y. May 7, 1999).

Significantly, "because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants and because the allure of treble damages, attorney's fees, and federal jurisdiction presents a powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO, courts have noted that they have an obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Holmes v. Parade Place, LLC*, No. 12-CV-6299 (GBD) (DF), 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013) (cleaned up); *see also Patrizzi v. Bourne in Time, Inc.*, No. 11-

CV-2386 (PAE), 2012 WL 4833344, at *3 (S.D.N.Y. Oct. 11, 2012). Indeed, because "virtually every ordinary fraud is carried out in some form by means of mail or wire communication . . . RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (internal quotation marks omitted).

2. Analysis

Measured against the foregoing pleading requirements, Plaintiffs' allegations of wrongdoing here fall short. For starters, Plaintiffs fail to identify a single instance in which the United Entities communicated a specific, fraudulent misrepresentation to them or anyone else. Plaintiffs identify one email from "UnitedHealthcare Plans AARP MedicareSupplement eNews@uhc-customer.com" dated April 21, 2025, which stated that members of the "AARP Medicare Supplemental Plan from UnitedHealthcare" have the "freedom to choose any doctor you like without having to stay within a specific network," SAC ¶ 120(g), but they conspicuously fail to allege that the contents of this email were false. Nor does the email have anything to do with the alleged delay or denial of any of Plaintiffs' Medicare claims or the Medicare claims submission process generally. The other communications Plaintiffs cite came from CMS, the MACs, or "Defendants" lumped together. *See id.* ¶ 120(a)-(f). But conclusory allegations — asserted "upon information and belief" — aside, *see id.* ¶¶ 2-5, 73, the Complaint fails to allege any facts suggesting that the United Entities were responsible for, or participated in, any of these communications.

More broadly, the Complaint alleges that Defendants "engag[ed] in a fraudulent scheme involving . . . (a) misrepresentations that only healthcare providers can submit claims, (b) the

13

implementation of practices and procedures that are designed to ensure that most claims will be denied, including the use of [artificial intelligence ('AI')] algorithms programmed to refuse, delay, or deny most claims, no matter how meritorious, . . . (c) and other acts of concealment and/or omissions." SAC ¶ 108. Such allegations, however, do not amount to a fraudulent scheme. For instance, the Complaint fails to articulate why any of Defendants' statements to the effect that "only healthcare providers can submit claims" are misleading. In point of fact, Plaintiffs' own allegations support the truth of these statements. *See e.g.,* SAC ¶ 120(g) ("[A]ny claim submitted by the policyholder and not the doctor will be rejected"); *id.* ¶ 109 (acknowledging that "patients who qualify for Medicare . . . are unable to obtain critical medical services because so many healthcare providers refuse to participate in Medicare"). Nor does the Complaint explain how Defendants' use of certain practices, including AI algorithms, when reviewing Medicare claims is deceptive. Practices or procedures that favor denial of policyholders' claims might be self-interested, harmful, or unfair, but it is well established that "conduct is not deceptive merely because it is wrongful or because it harms another." *Empire Merchs., LLC v. Reliable Churchill LLLP*, No. 16-CV-5226 (ARR) (LB), 2017 WL 5559030, at *10 (E.D.N.Y. Mar. 16, 2017), *aff'd*, 902 F.3d 132 (2d Cir. 2018); *see also McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) ("An allegation of wrongful conduct, however, is insufficient since not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud." (internal quotation marks omitted)); *Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 554 (S.D.N.Y. 2000) (finding "unjustified . . . and harmful" conduct not deceptive).[5] And Plaintiffs' final catch-all allegation

---

[5] On top of that, Plaintiffs' allegations regarding the use of AI, *see* SAC ¶¶ 5-8, are apparently based on articles about a plan — Medicare Advantage — unrelated to any of

— that Defendants engaged in "other acts of concealment and/or omissions," SAC ¶ 108 — is plainly too conclusory to "delineate with adequate particularity . . . the specific circumstances constituting the overall fraudulent scheme." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023) (internal quotation marks omitted). In short, Plaintiffs fail to plausibly allege that the United Entities engaged in a single RICO predicate, much less "a pattern of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Thus, their substantive RICO claim fails.

That is fatal to Plaintiffs' RICO conspiracy claim as well. To establish a RICO conspiracy claim, "a plaintiff must show that the defendant agreed with at least one other entity to commit a substantive RICO offense." *Crawford*, 758 F.3d at 487; *see* 18 U.S.C. § 1962(d). It follows that where, as here, a plaintiff fails to state a substantive RICO claim, a conspiracy claim under Section 1962(d) fails as well. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*, 525 U.S. 128 (1998); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014) ("Where a complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails."); *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588 (KMK), 2012 WL 1638326, at *8 (S.D.N.Y. May 8, 2012) ("[B]ecause Plaintiff has failed to plausibly state a substantive RICO claim, he also, therefore, has failed to state a RICO conspiracy claim.").

In short, Plaintiffs' RICO claims against the United Entities must be and are dismissed.

---

Plaintiffs' reimbursement claims at issue here and in which Plaintiffs do not allege to even be enrolled. *See* ECF No. 50, at 7 & n.2.

B.  **State-Law Claims**

In light of the Court's dismissal of Plaintiffs' sole federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims.  Pursuant to 28 U.S.C. § 1367, a district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Here, there is no basis to depart from that general rule.  Given the relatively early state of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Accordingly, Plaintiffs' state-law claims are dismissed.  *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (recognizing that if a plaintiff's federal claims are dismissed before trial and there has not been a substantial expenditure of resources on the state claims, state-law claims should generally be dismissed as well).

## CONCLUSION

For the reasons stated above, Defendants' motions are GRANTED, and Plaintiffs' Complaint is DISMISSED.  The Court declines to *sua sponte* grant Plaintiffs leave to amend to cure any defects in their claims against the MACs and in their RICO claims.  Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  In this case, leave to amend is not warranted because the defects in the claims against the MACs and the RICO claims are substantive, and Plaintiffs fail to suggest that they possess any additional facts that could cure them.  *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).  That failure is all the more significant because Plaintiffs were on notice of Defendants' arguments when filing the operative complaint.  *See* ECF No. 17, at 10-12; ECF No. 40, at 7-11.  Finally, when granted leave to amend in response to the earlier motions, Plaintiffs were expressly warned that they would "not be given any further opportunity" to amend their Complaint.  ECF No. 19; *see, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (cleaned up)).  In short, the Court will not grant leave to amend the claims against the MACs and the RICO claims.

That said, the Court grants Plaintiffs leave to amend their Complaint to allege diversity jurisdiction pursuant to 28 U.S.C. § 1332, which — if properly alleged — would provide the Court with an independent basis to exercise federal jurisdiction over Plaintiffs' state-law claims against the United Entities.[6]  Alternatively, Plaintiffs may refile their state-law claims against the

---

[6]     Plaintiffs' Complaint suggests that there is complete diversity between them and the United Entities but does not properly allege it (or invoke Section 1332) because it references Plaintiffs' residences rather than their citizenship.  *See* Compl. ¶¶ 18-19; *see also, e.g.*, *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)

17

United Entities in state court, where this case began.  Plaintiffs shall file any Third Amended Complaint **within three weeks of the date of this Opinion and Order**.  If Plaintiffs fail to amend their Complaint to properly invoke the Court's diversity jurisdiction by that date, the Court will direct the Clerk to enter judgment in favor of Defendants and close the case.

      The Clerk of Court is directed to terminate ECF Nos. 15, 49, and 53.

      SO ORDERED.

Dated: September 4, 2025
      New York, New York

                                                    JESSE M. FURMAN
                                                    United States District Judge

---

(reaffirming that, for the purpose of diversity jurisdiction, "a statement of the parties' residence is insufficient to establish their citizenship").