UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

PATRICIA L. CARLIN and ROY                  Civ. No. 24-8435 (JMF)
H. CARLIN,

                 Plaintiffs,

      -against-                    **THIRD AMENDED**
                                **VERIFIED COMPLAINT**

UNITEDHEALTH GROUP, INC., UNITED
HEALTHCARE, INC., UNITED HEALTHCARE
INSURANCE COMPANY, and DOES 1-50,
Inclusive,                               Jury Trial Demanded

                 Defendants.
_____x

      Plaintiffs PATRICIA L. CARLIN and ROY H. CARLIN, by and through their

undersigned counsel, bring this action individually and on behalf of all others situated (the

"Class" or "Classes") against the above-named Defendants for having engaged in a longstanding

scheme and conspiracy to defraud Plaintiffs and Class members by consistently, and in bad faith,

delaying and denying payment of legitimate claims for reimbursement for medical expenses.

## SUMMARY OF ACTION

      1.     The named-Plaintiffs, in their 80s, have contracted for Medicare coverage,

Medicare Supplement Coverage, and Prescription Drug Coverage (Medicare Rx) through

UnitedHealthcare Insurance Company and/or related UnitedHealthcare companies.[1]  Monthly

payments are debited by "UnitedHealthcare", (a trade name used by the UnitedHealthcare

---

[1] Plaintiffs' Supplement Insurance Coverage and Prescription Drug Coverage are identified as AARP Insurance
plan, but AARP advises its policyholders in writing that its "plans are insured by UnitedHealthcare Insurance
Company and affiliates (collectively "UnitedHealthcare"), not by AARP or its affiliates. Please contact
UnitedHealthcare if you have questiona about your policy, including any limitations or exclusions….Participants are
issued certificates of insurance by UnitedHealthcare under the master group insurance policy."

Defendants). The monthly payments are debited from Plaintiffs' respective Social Security

benefits and from their joint checking accounts.

2. Upon information and belief, Medicare, Medicare Supplement Insurance Plans,

and/or Medicare Prescription Drug Insurance Plans are administered by, *inter alia*, Defendants

UnitedHealth Group, Inc., UnitedHealthcare, Inc., and UnitedHealthcare Insurance Company

(hereinafter collectively referred to as "UnitedHealthcare" or "the UnitedHealthcare

Defendants").

3. Upon information and belief, the UnitedHealthcare Defendants share information

with National Government Services, Inc. ("NGS") and Novitas Solutions, Inc. ("Novitas")-and

with other companies and contractors as part of the process of reviewing, processing, denying

and/or paying the claims submitted by Plaintiffs and other Class members.

4. Upon information and belief, when Medicare claims are submitted by Plaintiffs

and others similarly situated, it is the regular practice of the UnitedHealthcare Defendants, NGS,

and Novitas to instruct clerks to deny, delay or refuse the claims, without any review by duly

licensed medical doctors. The practice of issuing such claim denials, delays or refusals by

unqualified persons without a physical examination or review of claimant's medical records is an

essential part of Defendants' scheme to defraud Plaintiffs and other Class members.

5. Indeed, in many cases, including, upon information and belief, the review of

Plaintiffs' and Class members claims, the UnitedHealthcare Defendants use artificial intelligence

(AI) in place of real medical professionals in reviewing claims based upon an AI model that said

Defendants know has a 90% error rate.[2] Defendants' AI algorithm, known as "nH Predict,"

overrides real doctors' determinations as to the amount of care a patient in fact requires to

---

[2] 90% of the tiny fraction of denied claims that are appealed are reversed on appeal.

recover from an illness or surgery, resulting in the inappropriate denial of necessary care prescribed by the patients' doctors.

6.     Despite the high error rate, Defendants continue to systematically deny claims using their flawed AI model because they know that only a tiny minority of policyholders (roughly 0.2%)[3] will appeal denied claims, and the vast majority will either pay out-of-pocket costs or forgo the remainder of their prescribed care. Defendants count on the patients' impaired conditions, lack of knowledge, and lack of resources to appeal the erroneous AI-powered decisions. In addition, the use of AI models eliminates the labor costs associated with paying doctors and other medical professionals for the time needed to conduct an individualized, manual review of each of Defendants' insured's claims.

7.     Defendants intentionally limit their employees' discretion to deviate from the predictions of the AI model by, among other things, setting up targets to keep, for example, stays in skilled nursing home facilities within 1% of the days projected by the AI model.[4]

8.     Upon information and belief, the wholesale denial of claims by Defendants with the use of AI algorithms is intentionally made in bad faith and in reckless disregard of claimants' right to have legitimate claims paid, and for the unlawful purpose of delaying and/or avoiding payment of legitimate and meritorious claims. According to Amber Lynch, a former NaviHealth[5] case manager who was fired for failing to meet performance goals, said she was expected to precisely follow the algorithm's coverage decisions, and that "[b]y the end of my time at NaviHealth… I realized I'm not an advocate, I'm just a money-maker for this company."[6]

---

[3] Karen Pollitz, et al., Claims Denials and Appeals in ACA Marketplace Plans in 2021, KFF (Feb. 9, 2023) https://www.kff.org/private-insurance/issue-brief/claims-denials-and-appeals-in-aca-marketplace-plans/.
[4] UnitedHealth used algorithms to deny care, staff say – STAT Investigation (Nov. 14, 2023) https://www.statnews.com/2023/11/14/unitedhealth-algorithm-medicare-advantage-investigation/.
[5] NaviHelth is a wholly-owned subsidiary of UnitedHealth Group. See When the Insurer Says No – The Week (March 10, 2025) at p. 11, https://theweek.com/politics/when-the-insurer-says-no.
[6] Id.

9.      By engaging in this misconduct, Defendants breached their fiduciary duties, including their duty of good faith and fair dealing, because their conduct serves Defendants' own economic self-interest and elevates Defendants' interests above the interests of the insureds.

10.     Defendants' fraudulent claims denial scheme affords Defendants a clear financial windfall in that they receive billions of dollars in policy premiums without having to pay for promised care, while forcing elderly policy holders such as Plaintiffs to deplete family savings to continue receiving necessary medical care.

11.     Upon information and belief, medical and healthcare providers were forced to spend $10.6 billion in 2022 in attempts to overturn claim denials, resulting in the decision by many medical and healthcare providers to simply "give up," *i.e.,* making the business decision that the process of appealing claims denials was too expensive and time-consuming, and often futile. Indeed, many medical and healthcare providers have completely opted out and/or refused to deal with the Centers for Medicare & Medicaid Services ("CMS"), and/or its agents, including the Defendants herein.

12.     When a medical or health care provider opts out and/or refuses to deal with CMS Medicare and/or its agents, an individual patient is theoretically entitled to submit a claim on a Medicare official form, which provides for a box to be checked stating: "The provider… refused to file a claim for Medicare Covered Services."

13.     However, Defendants often deny claims submitted by individuals, such as Plaintiffs and other Class members, falsely stating that "the claim must be submitted by the provider."

## JURISDICTION and VENUE

14. This Court has subject matter and personal jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

15. Venue is proper under 28 U.S.C. § 1391(b) as many of Defendants' actions giving rise to the claims occurred in this District.

## THE PARTIES

16. Plaintiff PATRICIA L. CARLIN, DOB 1941, a citizen of New York State, is enrolled in Medicare, as well as in UnitedHealthcare's Medicare Supplement Coverage and Medicare Rx Prescription Drug Coverage.

17. Plaintiff ROY H. CARLIN, DOB 1939, a citizen of New York State, is enrolled in Medicare, as well as in UnitedHealthcare's Medicare Supplement Coverage and Medicare Rx Prescription Drug Coverage.

18. Defendant UNITEDHEALTH GROUP, INC. ("UnitedHealth Group"), is a corporation organized under the laws of Delaware, with principal place of business located at 9800 Health Care Ln., Minnetonka, MN 55343. As of April 17, 2025, its market capitalization (also referred to as "net worth") was $415.38 billion USD,[7] an enormous increase from its market cap of $22.06 billion as of December 31, 2001.[8] Its Chief Executive Officer, Sir Andrew Witty, a British national, is reported to have had a 2023 annual compensation package of $23.5 million,[9] with only $1.7 million of that in salary, and much of the remainder of his compensation linked to an "incentive compensation plan" tied to the Company's profits, which has risen dramatically based largely on the success of the Company's claims denial scheme. UnitedHealth

---

[7] StockAnalysis.com, downloaded as of April 17, 2025.
[8] *Id.*
[9] Primalinvestigations.com

Group conducts insurance operations throughout the country. UnitedHealth Group, which has a license to use the federally registered service mark "UnitedHealth Group," markets and issues health insurance and insures, issues, administers, and makes coverage and benefit determinations related to health care policies nationally through its various wholly owned and controlled subsidiaries, controlled agents and undisclosed principals and agents, including Defendants UnitedHealthcare, Inc. and UnitedHealthcare Insurance Company. On or about February 13, 2025, UnitedHealth Group agreed to settle a U.S. Department of Labor federal lawsuit pending in the U.S. District Court of Western Wisconsin, alleging that a division of the Company wrongly denied thousands of claims to pay health care providers for certain services.[10]

19.    Defendant UNITEDHEALTHCARE, INC. is a corporation organized under the laws of Delaware, with its principal place of business located at 9800 Health Care Ln., Minnetonka, MN 55343.

20.    Defendant UNITEDHEALTHCARE INSURANCE COMPANY is a corporation organized under the laws of Connecticut, with its principal place of business located in Hartford, Connecticut.

21.    In addition to the Defendants named above, Plaintiffs sue named Defendants Does 1 through 50, inclusive, because the names, capacities, status, or facts showing these individual Defendants to be liable to Plaintiffs are not presently known. Plaintiffs are informed and believe, and based upon such information and belief allege, that each of these unidentified Defendants are responsible in some manner for the conduct alleged herein. Plaintiffs will amend this Third

---

[10] Christopher Snowbeck and Victoria Advocate, "UnitedHealth paying $20.25 million to settle lawsuit alleging improper denial of certain medical claims," (February 13, 2025), https://insurancenewsnet.com/oarticle/unitedhealth-paying-20-25m-to-settle-lawsuit-alleging-improper-denial-of-certain-medical-claims.

Amended Complaint to show these Defendants' true names and identities, together with the appropriate charging language, when such information has been ascertained.

## STATEMENT OF FACTS

22.    **Plaintiffs' Unpaid Claim No. 1.** Plaintiff Patricia Carlin ("P.C.")  filed an Amended Claim dated February 7, 2024 (claim incorrectly dated 2023) for medical services from the second week of February 2023 through January 2024 at $300/session totaling $10,500. Pursuant to written instructions identifying to whom and where New York claimants should submit their claim "Requests, for payment" i.e. directly to the UnitedHealthcare Defendants or to their subagent NGS, Plaintiff P.C. submitted this claim to CMS-Medicare c/o NGS and Novitas, referencing her ID number for her AARP Supplement Insurance membership plan with the UnitedHealthcare Defendants, with a mailing address for the UnitedHealthcare Defendants at PO Box 740819, Atlanta, GA 30374. It is the practice of the UnitedHealthcare Defendants to contract the processing of claims to affiliated entities such as NGS, which, upon information and belief, are given specific instructions by the UnitedHealthcare Defendants for the handling and determination of submitted claims.

23.    Upon information and belief, Plaintiff P.C.'s provider refused to submit a claim, forcing Plaintiff P.C. to submit the claim.

24.    Although after an appeal, a similar pro se claim from the same provider to Plaintiff P.C. had been paid, Defendant Novitas sent Plaintiff P.C. a letter, dated November 11, 2023, denying the claim on the grounds that it was "not submitted by provider".

25.    The letter paying the similar claim separated one visit of $300 for processing, stating: "The remaining services may appear on a separate statement." However, the separated claim was never paid and never appeared on a separate notice.

26.     When Plaintiff P.C. resubmitted or appealed, the claim was denied with a non-responsive undated CMS form MD-LT31, with a check in the box stating: "Out of jurisdiction, should be processed by another entity." The form was signed with illegible initials.

27.     Plaintiff P.C. resubmitted Claim #1 with a cover letter dated August 16, 2024 (erroneously dated August 16, 2023), stating: "I resubmit and, if denied, appeal from the [NGS] return for being "Out of jurisdiction, should be processed by another entity." Plaintiffs never received a response to this resubmission and appeal.

28.     **Plaintiffs' Unpaid Claim No. 2.** Plaintiff R.C. underwent heart surgery performed by Dr. Leo Girardi at New York-Presbyterian/Weill Cornell Medical Center.

29.     Plaintiff R.C. filed a claim by letter dated August 15, 2023, in the amount of $32,875 for private home nursing care from 9/19/22 through 10/7/2022 (18 days) after a multiday hospitalization for heart surgery for an aortic wrap and a heart valve replacement. Pursuant to written instructions identifying to whom and where New York claimants should submit their claim "Requests, for payment," i.e. directly to the UnitedHealthcare Defendants or to their subagent NGS, Plaintiff R.C. submitted this claim to CMS-Medicare c/o NGS and Novitas, referencing his ID number for his AARP Supplement Insurance membership plan with the UnitedHealthcare Defendants, with a mailing address for the UnitedHealthcare Defendants at PO Box 740819, Atlanta, GA 30374.

30.     The claim, with exhibits, was returned stamped with the incomprehensible phrase "Maximus Received Clerk 3 Sep 11, 2023."

31.     Plaintiff R.C. reapplied and/or appealed the denial of the claim dated August 15, 2023, in the amount of $32,875.

32.     Plaintiff R.C.'s hospitalization was extended due to a frozen bladder which, after two straight catheters, required him to leave the hospital with a catheter and a bag. The frozen bladder condition with catheter and bag continued for about 3 weeks.

33.     The alternative to private nursing care was a further extended stay in the hospital, which would have greatly increased the Medicare costs.

34.     As explained in Plaintiff R.C.'s letter to Defendants dated February 1, 2024, the Medicare Handbook titled Medicare and You, 2022 (page 43), expressly permits reimbursement for "… medically necessary part time or intermittent skilled nursing care, …. Home health services may also include … part time or intermittent home health aide service."

35.     Plaintiff R.C.'s New York licensed cardiologist determined private nursing was "medically necessary" because of Plaintiff R.C.'s continuing bladder issues and periodic fainting due to the surgery, bladder condition and medication.

36.     By letter dated 9/22/2023, CMS Medicare, referencing DCN: 230911L10158590, denied the claim stating: "…[W]e cannot process beneficiary submitted claims… You cannot file your own claim or Part A services (such as… home health…) unless you received the services while traveling outside the United States."

37.     The CMS 9/22/2023 letter continued, stating: "… [O]nly Medicare-enrolled providers and suppliers are permitted to file claims." It further states:

> "If the provider or supplier is not enrolled with Medicare, they are not required to file a claim to Medicare. …. You will need to work with your provider to submit the claim to Medicare." (emphasis added)

38.     Plaintiff R.C.'s provider refused to deal with Medicare or the UnitedHealthcare Defendants' agents because of the baseless denials, bureaucracy, paperwork and low pay for services. The provider advised Plaintiff R.C. in sum and substance: "Medicare only employs

algorithms or retains unqualified persons to deny claims. They are CLAIM DENIERS. JUST

GIVE UP."

39.    The CMS 9/22/2023 letter referred Plaintiff R.C. to the State Health Insurance

Assistance Program ("SHIP"). After being on hold for about half an hour and leaving a message,

someone called back, advising that there were two reasons for denial:

> First, that "the Claim not submitted by the provider." – As indicated above, the Medicare
> denial on this ground is contradicted by Medicare's own policy and writings, as
> evidenced by the fact that Medicare paid a claim not submitted by the provider to
> Plaintiff P.C.
> Second, that the home private nurse care was "Concierge services" not covered by
> Medicare. However, as explained by the provider to defendants, the reference to
> "Concierge Care" refers to a division of the provider and not the level of "medically
> necessary" nursing care. New York State licensed doctors are the ones who properly
> determine "medically necessary" private home nurse care, not nursing agencies,
> defendants' Medicare clerks or algorithms.

40.    Plaintiff R.C. reapplied and/or appealed for relief by letter dated February 1,

2024, to the CMS National Government Services and Medicare Claims Office c/o Defendant

Novitas.

41.    Upon information and belief, Plaintiff R.C.'s claim was denied based upon a

determination (without a physical examination of the patient or his medical records), either by a

non-human AI algorithm or by a CMS Novitas clerk or doctor trained to deny claims.

42.    Plaintiff R.C.'s appeal/resubmission was denied with non-responsive undated

CMS form MD-LT31, with a box checked stating: "Out of jurisdiction, should be processed by

another entity."

43.    **Plaintiffs' Unpaid Claim No. 3.** By letter dated February 3, 2024, Plaintiff R.C.

submitted a claim of the same date for $12,298.20, for "medically necessary" private nursing

(nights RN, days nurses' aide) following knee replacement surgery on October 24, 2023, with a

multiday hospitalization and frozen bladder complications. Pursuant to written instructions

identifying to whom and where New York claimants should submit their claim "Requests, for payment," *i.e.,* directly to the UnitedHealthcare Defendants or to their subagent NGS, Plaintiff R.C. submitted this claim to CMS-Medicare c/o NGS and Novitas, referencing his ID number for his AARP Supplement Insurance membership plan with the UnitedHealthcare Defendants, with a mailing address for the United Health Care Defendants at P.O Box 740819, Atlanta, GA 30374.

44.    Plaintiff R.C.'s private nursing claim was supported by a letter of "medically necessary" by a New York State licensed Urologist, Scott David, MD, who treated and cured the frozen bladder complications.

45.    In an attempt to avoid the arbitrary and automatic denial of his claim based on the erroneous grounds that a claim "must be filed by a provider," Plaintiff R.C. quoted and submitted an excerpt from the Medical Handbook titled Medicare and You, 2022 (page 43), which expressly permits reimbursement for:

> "medically necessary" part time or intermittent <u>skilled nursing care</u>… Home health services may also include … part time or intermittent home <u>health aide</u> services." (emphasis added).

46.    Upon information and belief, the 2023, 2024, and 2025 (page 43) Handbook sections read the same. To avoid the automatic improper denial on grounds – "submitted by claimant, not provider" – Plaintiff R.C. checked the form box which states: "The provider … refused to file a claim for Medicare Covered Services."

47.    Plaintiff R.C. also submitted evidence of a similar automatic CMS denial letter to his wife, discussed above, which, after appeal, CMS finally paid.

48.    Upon information and belief, Defendants automatically denied this medical claim without properly considering the merits of the claims.

49.     Upon information and belief, Defendants and their agents had a program and procedure in place whereby they were incentivized financially to deny and delay claims, and to the extent the UnitedHealthcare Defendants contracted out claims processing to affiliated entities, these entities were instructed on how to deny and delay claims.

50.     Defendants denied Plaintiff R.C.'s claim. On appeal, Defendants again denied the claim.

51     Upon information and belief, Defendants intentionally and deliberately interfered with Plaintiff R.C.'s contract with Medicare.

52.     **Plaintiffs' Unpaid Claim No. 4.** Plaintiff P.C. filed a claim dated August 11, 2024, by letter dated August 8, 2024, for preventive medical care (initial (first) visit with new Doctor) and related radiology (mammograms), annexing invoices:

| | | |
|---|---|---|
| Dr. Carlon | 8/1/24 | $ 950.00 |
| Kolb Radiology | 8/2/24 | $ 975.00 |
| Dr. Rasmussen | | $1200.00 |
| Dr. Rasmussen | | $1200.00 |
| **Total** | | **$4,325.00** |

53.     Plaintiff P.C. submitted the claim herself, since these providers were not enrolled in Medicare and refused to submit a claim to Medicare. Pursuant to written instructions identifying to whom and where New York claimants should submit their claim "Requests, for payment," *i.e.*, directly to the UnitedHealthcare Defendants or to their subagent NGS, Plaintiff P.C. submitted this claim to CMS-Medicare c/o NGS and Novitas, referencing her ID number for her AARP Supplement Insurance membership plan with the UnitedHealthcare Defendants, with a mailing address for the UnitedHealthcare Defendants at PO Box 740819, Atlanta, GA 30374.

54.     The claim was received in Defendant NGS's mailroom on August 19, 2024. In an envelope from Defendant "National Government Services, a CMS Contracted Agent", NGS, by

form CL-8- 102 dated August 26, 2024, returned the claim "for the reasons checked below." However, none of the boxes were checked.

55.     **Plaintiffs' Unpaid Claim No. 5.** Provider Dr. Scott David is not enrolled in Medicare and refuses to submit claims to Medicare. On June 14, 2024, Dr. David rendered medical services to Plaintiff R.C., Codes 99215 and 51798, to render a diagnosis or determine the cause of Plaintiff R.C.'s symptoms. Dr. David charged $550 plus $250 totaling $800.

56.     On August 5, 2024, after the initial diagnosis, Dr. David rendered additional medical services to Plaintiff R.C., namely, a cystoscopy, Code 52000, to render a diagnosis or determine the cause of the symptoms. Dr. David charged $1,800.

57.     The charges were invoiced and paid by Plaintiff R.C. on the date of service.

58.     Upon information and belief, it would be futile for Plaintiff R.C. to file a claim for these charges since such claim would be denied by the Defendants pursuant to their scheme to defraud through their scheme to deny and delay all claims.

59.     The claim dated August 5, 2024 for Dr. David was for $3,950, which was received by NGS on August 19, 2024 was rejected by NGS letter dated October 15, 2024, falsely stating: "a doctor or practitioner who has dropped out of the Medicare Program must privately contract with you or your legal representative for services that he or she furnished." The October 15, 2024 letter further stated: "No further payment will be made to you for services performed by this doctor/practitioner after 15 days from the postmark of this notice." Shortly thereafter, on October 25, 2024, Plaintiff R.C. received a check in partial payment for this claim from "United Healthcare" from its Atlanta headquarters in the amount of $276.37. Plaintiff R.C. also received a Medicare Part B check on October 22, 2024 in the amount of $619.11.

60.    **Plaintiffs' Unpaid Claim No. 7.** Plaintiff P.C. was provided medical services during the period from July-November 2024 by Drs. Rasmussen, Rosen, Kendler, and Moley, none of whom are enrolled in Medicare and refuse to submit claims to Medicare, since the vast majority are wrongfully denied.

61.    Medical services were rendered on the following dates under the following codes:

| Provider | Code | Sessions 2024 | Amounts |
|---|---|---|---|
| Rasmussen | 90837 | 7/9, 7/18, 7/24, 7/31 | |
| | | 8/23, 9/4/9/18/9/26 at $300/session | $ 2400.00 |
| Rosen | M54.50 | 10/11, 11/8 at $150/session | $  300.00 |
| Moley | 99203 | Diagnosis and prescription 10/16 | $  650.00 |
| **Total** | | | **$4,950.00** |

62.    The charges were paid by Plaintiff P.C. on the dates of service.

63.    Pursuant to written instructions identifying to whom and where New York claimants should submit their claim "Requests, for payment," *i.e.*, directly to the UnitedHealthcare Defendants or to their subagent NGS, Plaintiff P.C. submitted this claim to CMS-Medicare c/o NGS and Novitas, referencing her ID number for her AARP Supplement Insurance membership plan with the UnitedHealthcare Defendants, with a mailing address for the UnitedHealthcare Defendants at PO Box 740819, Atlanta, GA 30374. In mid-November 2024, Defendants returned Plaintiff P.C.'s claim form and package, undated and without postmark or a note.

64.    The United/AARP Plan processed the claim for Dr. Ari Rosen on 02/18/25 and paid Plaintiff P.C. $60 in partial payment of this claim. Both Plaintiffs P.C. R.C. periodically received checks from UnitedHealthcare under the AARP Medicare Supplement Plan, although there was rarely any identification as to what claim the payment related to. Sometimes Plaintiffs

received two checks within a close time period, one from Medicare and the other from
UnitedHealthcare drawn on a "Citibank Delaware" account.

65.     Upon information and belief, the piecemeal and inconsistent payments Plaintiffs
eventually received from United – often in the form of small checks without any explanation or
cross-reference to the underlying claims – were not accidents or clerical mistakes, but part of a
deliberate strategy. By issuing partial payments without explanation, the United Defendants
created confusion for Plaintiffs and similarly situated insureds, making it nearly impossible to
reconcile which claims, if any, were actually being honored, and forcing policyholders to
shoulder the administrative burden of securing full re-imbursement.

66.     The experiences of Plaintiffs R.C. and P.C. mirror a broader pattern in which
United routinely returned claim forms without processing them, stamped them with cryptic or
meaningless notations, or falsely stated that the claim was "out of jurisdiction" or "must be
submitted by provider." These responses were intentionally non-responsive and designed to
frustrate claimants into abandoning their efforts, even when the claims were supported by
medical records, Medicare guidance, and treating physicians' determinations of medical
necessity.

67.     While Plaintiffs were directed by the United Defendants to send many of their
claims to NGS and/or Novitas for initial processing, UnitedHealthcare was still the
Supplemental/AARP insurance provider on all claims submitted. In this way, when Plaintiffs
would get a "Medicare Summary Notice" from NGS and/or Novitas in relation to a claim, it
would almost universally state, "We have sent your claim to your Medigap insurer. Send any
questions regarding your benefits to them. Your Medigap insurer is UNITEDHEALTH GROUP."
This language demonstrates that, regardless of the role of NGS or Novitas in the initial intake of

claims, UnitedHealthcare remained the responsible decisionmaker and ultimate payor on all claims under Plaintiffs' Supplemental/AARP policies.

68.      **Delayed and Unpaid Claims by the UnitedHealthcare Defendants.** In addition to denying Plaintiffs' legitimate claims directly, and indirectly through agents NGS and Novitas, the UnitedHealthcare Defendants also delayed the payment of claims by Plaintiffs R.C. and P.C. For example, Plaintiff R.C. finally received a reimbursement check for $276.37 from "UnitedHealthcare, P.O. Box 740819, Atlanta, GA 30374-0819" dated October 25, 2024, but only after a long delay. Similarly, Plaintiff P.C. received a check vial the U.S. mails from UnitedHealthcare, P.O. Box 240819, Atlanta, GA 30374-0819, dated April 7, 2025, in the amount of $37.49, but only after an inordinately long delay.

## CLASS ACTION ALLEGATIONS

69.      Plaintiffs bring this action as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of themselves and on behalf of all others similarly situated, defined as follows (the "Class" or "Classes"): The Nationwide Class: All individuals who were Medicare beneficiaries who submitted claims to CMS and/or any of the UnitedHealthcare Defendants, NGS and/or Novitas, for the period from January 1, 2010 to the present whose claims processing was unreasonably delayed or were denied on the grounds, *inter alia*, that (a) only medical providers could submit claims, (b) no reason was given, or (c) the mailed claim form was returned to the claimant without explanation. Excluded from the Class are Defendants and any entity in which they have a controlling interest and their legal representatives, officers, directors, assignees, successors, and their officers, directors, management, employees, subsidiaries, and affiliates. Plaintiffs reserve the right to revise the

definition of the Class, and reserve the right to establish other Classes or sub-classes where appropriate.

70.    Members of the Class are so numerous and widely geographically dispersed throughout the United States and its territories that joinder is impracticable. Plaintiffs believe that there are thousands of members of the Class, the exact number to be determined in discovery and at trial. Further, the identities of Class members will be readily ascertainable through business records kept in regular order.

71.    Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs and all members of the Class were damaged by the same wrongful conduct by Defendants.

72.    Plaintiffs will fairly and adequately protect and represent the interests of the Class.

73.    Plaintiffs' interests are coincident with, and not antagonistic to, the Class.

74.    Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action litigation.

75.    Questions of law and fact common to the Class includes, but are not limited to: (a) Whether Defendants participated and engaged in a fraudulent scheme to intentionally refuse and/or delay the processing and deny legitimate claims; (b) Whether Defendants caused Class members to incur damages, including the non-payment and/or delay of the processing of claims, causing Class members to incur out-of-pocket costs in connection with medical services and expenses that should have been promptly reimbursed to them by the Defendants and CMS; (c) Whether Defendants conspired with each other and with others to intentionally delay the processing of claims and to deny legitimate claims; (d) Whether Defendants engaged in deceptive and/or fraudulent activities intended to defraud or harm Plaintiffs and Class members;

(e) Whether and to what extent Defendants financially benefitted from said fraudulent scheme; (f) Whether Defendants violated state consumer protection acts; (g) Whether Defendants owed a duty of care to Plaintiffs and Class members, and whether Defendants breached that duty; and (h) Whether Defendants were unjustly enriched.

76.     Questions of law and fact common to members of the Class predominate over questions, if any, that may affect only individual members of the Class, because Defendants have acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendants' wrongful conduct.

77.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy. Among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

78.     The Class may also be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award declaratory and injunctive relief with respect to the Class.

79.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT – NATIONWIDE**

## AGAINST ALL DEFENDANTS
### (on behalf of Plaintiffs and the Nationwide Class)

80.     Plaintiffs reallege and incorporate by reference all allegations set forth in the preceding paragraphs of the Third Amended Complaint as though fully set forth herein.

81.     Defendants formed into a contract of insurance (insurance agreement) with the Plaintiffs and Class members that included offer, acceptance and consideration.

82.     Pursuant to that insurance agreement, Plaintiffs and the Class paid money to Defendants in exchange for Defendants providing health insurance and/or prescription drug insurance policies to Plaintiffs and the Class. Defendants received premiums in exchange for the issuance of policies of health and/or prescription drug insurance.

83.     Each insurance agreement included, without limitation, Defendants' duty to exercise their fiduciary duties to policyholders, abide by applicable federal and state laws, and adequately review and inform policyholders prior to a claim denial.

84.     Plaintiffs and the Class performed their obligations under the contract by paying the amounts under the contracts in a timely manner.

85.     Defendants breached each insurance agreement by, without limitation, failing to keep their promise to fulfill their fiduciary duties to policyholders, abide by applicable federal and state laws, provide a thorough, fair, and objective investigation of each submitted claim prior to a claim denial, and provide written statements to Plaintiffs and the Class, accurately listing all bases for Defendants' denial of claims and the factual and legal bases for each reason given for such denial.

86.     By designing and applying claims review policies and procedures that insured that most claims would be denied, including use of the nH Predict AI Model and other algorithms to

unreasonably deny Plaintiffs' and Class members' claims without an adequate individualized investigation, Defendants breached their insurance agreements.

87.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs and the Class have suffered damages in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – NATIONWIDE AGAINST ALL DEFENDANTS
### (On behalf of Plaintiffs and the Nationwide Class)

88.     Plaintiffs reallege and incorporate by reference all allegations set forth in the preceding paragraphs of the Third Amended Complaint as though fully set forth herein.

89.     The health and prescription drug contracts that Plaintiffs and the Class had with the Defendants contained implied covenants of good faith and fair dealing, including the implied covenant that Defendants would make prompt and fair payment of Plaintiffs' and Class members' claims.

90.     Defendants breached their duty of good faith and fair dealing by, among other things, (a) failing to require their agents to conduct thorough, fair and objective investigations of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims in a manner so as to avoid unfair denial, (b) establishing guidelines and procedures that ensured that most claims would be denied, whether or not they were meritorious, and (c) improperly delegating their claims review function to the nH Predict system or other algorithms which use automated processes to improperly deny claims.

91.     Defendants' practices as described herein violated their duties to Plaintiffs and Class members under the insurance contracts.

92.     Defendants' practices as described herein constitute an unreasonable denial of Plaintiffs' and Class members' rights to a thorough, fair, individualized, and objective investigation of each of their claims in breach of the implied covenant of food faith and fair dealing arising from Defendants' insurance agreements.

93.     Defendants' practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiffs and Class members in breach of the implied covenant of good faith and fair dealing arising from the Defendants' insurance agreements.

94.     The Defendants' wrongful denial of Plaintiffs' and Class members' right to a thorough, fair and objective investigation and wrongful denial of claims damaged Plaintiffs and Class members.

95.     As a direct and proximate result of Defendants' breaches, Plaintiffs and Class members have suffered and will continue to suffer in the future, economic losses, including the benefits owned under the health and prescription drug plans in the millions of dollars, the interruption in Plaintiffs' and Class members' businesses, and other general, incidental, and consequential damages in amounts according to proof at trial. Plaintiffs and Class members are also entitled to recover statutory and prejudgment interest against Defendants.

96.     Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiffs and Class members to punitive damages against Defendant.

### THIRD CAUSE OF ACTION
### (FRAUD)
### (On behalf of Plaintiffs and the Nationwide Class)

97.     Plaintiffs reallege and incorporate by reference all allegations set forth in the preceding paragraphs of the Third Amended Complaint as though fully set forth herein.

Plaintiffs incorporate by reference all of the allegations above as though fully set forth herein.

98.    Plaintiffs bring this claim on behalf of themselves and other Class members.

99.    Pursuant to Defendants' fraudulent scheme, which specifically targeted Medicare beneficiaries such as Plaintiffs and other Class members, Defendants, *inter alia*, knowingly misrepresented, concealed, suppressed, and/or omitted material information regarding the right of Class members to directly file claims with Defendants for the payment of legitimate claims and/or reimbursement of legitimate healthcare expenses already incurred.

100.    By not telling Plaintiffs and other Class members that they had a right to submit claims directly to the Defendants, at least under certain circumstances, and by affirmatively telling Plaintiffs and other Class members by telephone or in mailed written communications that they did not, in effect, have the right to directly submit claims and that claims could only be submitted by their healthcare providers, Defendants were making these misrepresentations and/or omissions knowingly, or at least in reckless disregard of their falsity.

101.    At all times material hereto, Defendants were under an affirmative, ongoing duty and obligation to disclose to Plaintiffs and other Class members that they had a right, at least under certain circumstances, to directly file claims with the Defendants for the costs and expenses of healthcare services already provided and covered under the Medicare program.

102.    The facts misrepresented, concealed, and/or omitted by Defendants were material to Plaintiffs' and Class members' decisions to directly submit claims to Defendants for healthcare bills for services already rendered and/or to directly submit claims for out-of-pocket expenses for healthcare services already provided to them.

103.    Defendants intended to induce Plaintiffs and Class members to rely on their misrepresentations and/or omissions.

104.     Plaintiffs and other Class members reasonably believed that Defendants were accurately relating information regarding the claims process, or that Defendants were inaccurately relaying information regarding the claims process but that such inaccuracies were good-faith errors and not part of a systematic scheme to defraud them.

105.     If Plaintiffs had known that Defendants' denial of their claims and/or rejection of their claims by, *inter alia*, returning their mailed claims to them by return mail, without explanation, was part of an intentional scheme to defraud, Plaintiffs would have pursued their legal claims at an earlier date.

106.     Plaintiffs' and Class members' reliance on Defendants' misrepresentations, concealment, and/or omissions was, thus, to their detriment.

107.     As a proximate result of Defendants' conduct, Plaintiffs and Class members have been damaged because they, or their healthcare providers, were not reimbursed and/or paid for legitimate claims as a result of Defendants' fraudulent scheme, resulting in millions of dollars in damages, the amount of which is to be determined at trial.

108.     Plaintiffs and Class members are entitled to compensatory and punitive damages, in amounts to be determined at trial.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE PER SE, OR, ALTERNATIVELY, NEGLIGENCE
### (On behalf of Plaintiffs and the Nationwide Class)

109.     Plaintiffs reallege and incorporate by reference all allegations set forth in the preceding paragraphs of the Third Amended Complaint as though fully set forth herein.

110.     Plaintiffs bring this claim on behalf of themselves and other Class members.

111.     Each Defendant failed to act as a reasonably prudent person would under circumstances where they are processing and/or paying claims and other bills.

112.    Each Defendant owed a duty of care to Plaintiffs and Class members to fully and accurately disclose information about the claims process and to process and pay legitimate claims submitted directly by Plaintiffs and other Class members.

113.    Each Defendant knew, or in the exercise of reasonable care should have known, that Plaintiffs and other Class members had the right to, and were entitled to, directly submit claims to the Defendants.

114.    Each Defendant also knew, or in the exercise of reasonable care should have known, that Plaintiffs and Class members would not have the time or the ability to investigate whether Defendants' representations to them were true or not, *i.e.*, that they could not submit claims directly, but that their claims could only be submitted through their healthcare providers.

115.    Each Defendant further knew or, in the exercise of the reasonable care, should have known that their conduct violated their duty of care under state and federal law to Medicare beneficiaries, including Plaintiffs and Class members, including providing true and correct information.

116.    Each Defendant also knew or, in the exercise of the reasonable care, should have known that their conduct could be remedied and abated.

117.    Defendants, by action and inaction, representation, and omission, breached their duties of reasonable care, failed to exercise ordinary care, and failed to act as reasonably careful persons and/or companies would act under the circumstances in providing Plaintiffs and Class members accurate information regarding the claims process, and in processing and paying legitimate claims, in that they knew, or had reason to know, that they were failing to meet their duties, and that Defendants' breach would cause Plaintiffs and Class members to incur monetary damages.

118.    As a direct and proximate result of Defendants' breached duties to Plaintiffs and Class members, Plaintiffs and Class members have suffered damages and will continue to suffer damages in an amount to be determined at trial, including, but not limited to the out-of-pocket expenses they incurred for healthcare costs that should have been paid by, or reimbursed, by Defendants.

## FIFTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)
### (On behalf of Plaintiffs and the Nationwide Class)

119.    Plaintiffs reallege and incorporate by reference all allegations set forth in the preceding paragraphs of the Third- Amended Complaint as though fully set forth herein. Plaintiffs incorporate by reference all of the allegations above as though fully set forth herein.

120.    Plaintiffs bring this claim on behalf of themselves and other Class members.

121.    Defendants benefitted when, by means of Defendants' wrongful conduct alleged herein, Defendants knowingly caused Plaintiffs and Class members to incur healthcare expenses covered by Medicare, but which were not paid for by Medicare, or for which Defendants wrongfully failed to pay pursuant to legitimate claims.

122.    Defendants have voluntarily and knowingly accepted and retained wrongful benefits by failing to pay the legitimate claims of Plaintiffs and Class members. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and Class members.

123.    As a result of Defendants' wrongful conduct alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class members.

124.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

125.    It is inequitable and unjust for Defendants to retain the benefits they received, without justification, for their delay and non-payment of legitimate claims in an unfair and unconscionable manner. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

126.    Defendants are therefore liable to Plaintiffs and Class members for their non-payment of legitimate claims in the amount of Defendants' wrongfully obtained retention of monies that should have been paid out on legitimate claims.

**SIXTH CAUSE OF ACTION**
**(VIOLATIONS OF STATE CONSUMER PROTECTION ACTS)**
**(On behalf of Plaintiffs on behalf of Subclasses for Each State and state consumer protection act listed below)**

127.    Plaintiffs incorporate by reference all of the allegations set forth in the preceding paragraphs of the Third Amended Complaint as though fully set forth herein.

128.    This claim is brought by Plaintiffs on behalf of themselves and other Class members for violations of state consumer protection acts, including:

a. the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, et seq.;

b. the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, et seq.;

c. the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521, et seq.;

d. the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq.;

e. the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. and § 17500, et seq.; the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

f. the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq.;

g. the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110, et seq.;

h. the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2513, et seq.;

i. the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, et

seq.;

j.  the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq.;

k.  the Georgia Uniform Deceptive Trade Practices Act, Ga. Code. Ann. § 10-1-370, et seq.

l. the Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. § 480-1, et seq.;

m. the Idaho Consumer Protection Act, Idaho Code § 48-601, et seq.;

n. the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq.;

o.  the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, et seq.;

p. the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714H.1, et seq.;

q. the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, et seq.;

r. the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, et seq.;

s. the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Stat. Ann. § 51:1401, et seq.;

t. the Maine Unfair Trade Practices Act, Me. Stat. tit. 5, § 207, et seq.;

u.  the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, et seq.;

v. the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen. Laws ch. 93A, § 11, et seq.;

w.  the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, et seq.;

x. the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, et seq.;

y. the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, et seq.;

z. the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.;

aa. the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-101, et seq.;

bb. the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, et seq.;

cc. the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, et seq.;

dd. the New Hampshire Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, et seq.;

ee.  the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq.;

ff. the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.;

gg. the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, et seq.;

hh. the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75 1.1, et seq.;

ii. the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, et seq.;

jj.  the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, et seq.;

kk.  the Oklahoma Consumer Protection Act, 15 Okla. Stat. Ann. § 751, et seq.;

ll.  the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.;

mm.  the Pennsylvania Unfair Trade Practices and Consumer Protect Law, 73 Pa. Cons. Stat. § 201-1, et seq.;

nn. the Rhode Island Unfair Trade Practice and Consumer Protection Act, 6 R.I. Gen. Laws § 6-13.1-2, et seq.;

oo.  the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq.;

pp.  the South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, et seq.;

qq.  the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47–18–101, et seq.;

rr.  the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, et seq.;

ss. the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, et seq.;

tt. the Vermont Consumer Fraud Act, Vt. Code Ann. tit. 9, § 2451, et seq.;

uu. the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, et seq.;

vv.  the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, et seq.;

ww. the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, et

seq.;

xx. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, et seq.; and

yy. the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, et seq. 331.

129.    The acts, practices, misrepresentations, concealment, and/or omissions by Defendants described above, and Defendants' conduct with regard to the fraudulent process of delaying and denying claims was conduct involving trade or commerce, and constituted unfair and/or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

130.    Defendants' deceptive acts and practices created a likelihood of causing confusion and misunderstanding by Plaintiffs and Class members in connection with the Defendants' handling of and non-payment of their claims. Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the provision, sale or advertisement of goods and medical services, whether or not a person has in fact been misled, deceived or damaged in violation of each of the above-enumerated statutes.

131.    Plaintiffs and Class members purchased, contracted for and incurred the healthcare expenses for healthcare services for primarily personal and/or family purposes. The healthcare expenses were paid for, in whole or in part, by Plaintiffs and Class members.

132.    Plaintiffs, on behalf of themselves and the Class members, seek injunctive relief, monetary damages, treble damages and such other and further relief as set forth in each of the above enumerated statutes.

**JURY DEMAND**

133.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and the proposed Class, demand a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiffs, on their own behalf and on behalf of the proposed Class, seek judgment against Defendants and that this Court:

a.  Determine that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3),

b.  Direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class members, and appoint Plaintiffs as the named representatives of the Class and Plaintiffs' counsel as Class Counsel;

c.  Award Plaintiffs and the Class members compensatory, statutory, treble, and punitive damages in an amount to be determined at trial, plus interest in accordance with law;

d.  Award Plaintiffs and the Class members their costs of suit, including reasonable attorneys' fees as provided by law;

e.  Award appropriate equitable and injunctive relief;

f.  Award disgorgement and/or restitution;

g.  Awarding prejudgment interest to the extent permitted by law; and

h.  Award such other and further relief as the Court deems just and proper.

Dated: New York, New York
        September 24, 2025

                        McCALLION & ASSOCIATES LLP

                        */s/ Kenneth F. McCallion*
                        Kenneth McCallion
                        Darragh O'Boyle
                        *Attorneys for Plaintiffs*
                        100 Park Avenue – 16th Floor
                        New York, NY 10017
                        (646) 366 0884
                        kfm@mccallionlaw.com

**VERIFICATION**

Roy. H. Carlin, declares the following under penalty of perjury:

1.      I am one of the Plaintiffs in the above Second Amended Verified Complaint and am fully knowledgeable as to the facts and circumstances of this matter.

2.      I have read the foregoing Third Amended Verified Complaint and know the contents to be true of my own knowledge, except to matters on information and belief and, as to those matters, I believe them to be true.

_Roy H. Carlin_

Dated: New York, New York
        September 24, 2025